NIXON AND NIXON, INC., Plaintiff and Appellant,

v.

JOHN NEW & ASSOCIATES, INC., Defendant and Respondent.

No. 16989.

Supreme Court of Utah.

Jan. 28, 1982.

L. Brent Hoggan of Olson, Hoggan & Sorenson, Logan, for plaintiff and appellant.

Richard Richards, Ogden, for defendant and respondent.

STEWART, Justice:

Plaintiff, Nixon and Nixon, Inc. (the "Nixons"), purchaser of real estate, sought specific performance of a contract to purchase approximately twenty acres of undeveloped real estate located in Weber County, Utah. The trial court found the contract too vague for specific performance without specifying which provision or provisions were faulty for that reason. Judgment was entered restoring the parties to their status before the agreement. Plaintiff appeals.

John New, seller, had previously mortgaged the property to Commercial Security Bank. After his default on the mortgage, the bank foreclosed the mortgage on the property. On November 20, 1978, the last day of the six-month redemption period, Nixon & Nixon, Inc., a real estate development corporation, agreed to buy the property for $130,000. Jack Nixon and his father, Ezra J. Nixon, Sr., were the principal stockholders of the plaintiff, Nixon & Nixon, Inc.

Pursuant to an agreement between the Nixons and John New, the Nixons initially paid the bank $76,928.73, the amount necessary to redeem defendant's foreclosed property. Also, Nixon contracted to prepare a subdivision plat and to proceed with engineering and development of the property at a commercially reasonable speed, to pay the difference between the purchase price and the redemption price six months from the final plat filing, and to make all normal improvements and pay all normal improvement costs associated with the property development. If Nixon did not pay New & Associates the amount due and payable six months from the filing of final subdivision plat, the money then due and owing was to bear interest at the rate of 8%. The contract further provided that if Nixon did not pay New & Associates the contract price within four years from filing of the final

plat, "the note shall be in default and New & Associates may proceed according to law."

New & Associates' duties were to convey title to the described property clear of all liens; to provide the Nixons a policy of title insurance insuring the buyer's title; to be responsible for the realignment or fencing of the Millstream Creek if it proved necessary, or if the work were not done within the specified time, to permit the Nixons to do the work and deduct the expenses from the purchase price. Nixons were to be responsible for any extraordinary FHA requirements beyond Ogden City requirements of up to $7,500. The contract allowed the Nixons to require John New to repurchase the property for $100,000 in the event the Nixons determined that development was practical.

Jack Nixon contacted surveyors and engineers and had initial sketches drawn as preliminary steps. As of May 1979, however, he had made no improvements on the property. At trial he explained why development had not commenced. According to him, the death of Ezra Nixon caused an initial setback in the project and the onset of the winter months created conditions not conducive to the development and improvement of raw ground. More importantly, the evidence established that it would be commercially unfeasible for a buyer to subdivide and improve a raw piece of property before clear title was tendered. As of May 1979, despite a contract term making time of the essence, New had not tendered a deed of clear title. That same month, Jack Nixon discovered that New, on his own, had begun to subdivide the property.

Jack Nixon testified he was ready, willing, and able to execute a note in accordance with the terms of the contract but that he had not received a deed or a title insurance policy from defendant as required by the contract. Mr. Hughes, New's attorney, also testified that property development and the expenditure of large sums of money could not reasonably be expected until clear title was tendered.

In holding for New & Associates on the ground that the contract was too vague to be enforceable, the court did not delineate any specific ambiguity. The sole finding on ambiguity is in the following language:

[t]he contract is so ambiguous that the rights of the defendant cannot be ascertained or enforced except at the whim or caprice of the plaintiff, and to enforce the contract as the plaintiff now requests would be to deprive the defendant of any equity he may have had in the property.

 Contracts are to be construed in light of the reasonable expectations of the parties as evidenced by the purpose and language of the contract. A contract need not provide for every collateral matter or possible contingency. *Reed v. Alvey*, Utah, 610 P.2d 1374 (1980); *Pitts v. Marsh*, 222 Kan. 586, 567 P.2d 843 (1977). In the instant case, there is no claim the contract is uncertain as to parties, subject matter, or consideration. Failure to specify time for performance will not preclude specific enforcement since when no time is agreed upon, the general rule requires completion within a reasonable time under all circumstances. *Ferris v. Jennings*, Utah, 595 P.2d 857 (1979). In light of John New's failure to tender a document of title to Jack Nixon, there is no merit in the argument that Nixon did not proceed in good faith in performing the contract. Under established principles of law, the agreement was sufficiently certain in its essential terms and the obligations and rights of the parties were adequately defined to support specific performance. *Reed v. Alvey, supra.*

Because the only issue argued was the vagueness of the contract, we decline to comment on any other aspects of the controversy between the parties, and leave all other matters to the trial court. Reversed and remanded for further proceedings. Costs to appellant.

HALL, C. J., and HOWE and OAKS, JJ., concur.

MAUGHAN, J., heard arguments but died before the opinion was filed.