HCA HEALTH SERVICES OF UTAH, INC., a Utah corporation; and Hospital Corporation of America, a Tennessee corporation; and the Liquidating Trust, Plaintiffs, Appellees and Cross–Appellants,

v.

ST. MARK'S CHARITIES, a Utah non-profit corporation, formerly known as St. Mark's Hospital, Inc.; and the Liquidating Trust, Defendants, Appellants and Cross–Appellees.

No. 910571–CA.

Court of Appeals of Utah.

Jan. 26, 1993.

---

Anthony L. Rampton, Salt Lake City, for defendants, appellants.

Richard D. Burbidge, Stephen B. Mitchell, and Douglas H. Holbrook, Salt Lake City, for plaintiffs, appellees.

Before BENCH, GARFF and RUSSON, JJ.

RUSSON, Associate Presiding Judge:

St. Mark's Charities (St. Marks) appeals the district court's order and judgment awarding summary judgment in favor of Hospital Corporation of America and HCA Health Services of Utah, Inc., (collectively, HCA) on the Fire and Life Safety Codes Indemnity and Escrow Agreement claim. It also appeals the district court's denial of its motion to amend its answer. HCA cross-appeals the district court's order and judgment awarding summary judgment in favor of St. Marks on the Hill–Burton Trust Escrow Agreement claim. We affirm.

## I. FACTS

On September 18, 1987, HCA entered into an asset purchase agreement for the purchase of a hospital from St. Marks. In connection with that transaction, the parties subsequently executed two escrow agreements, the Fire and Life Safety Codes Indemnity and Escrow Agreement (the fire and life safety escrow agreement) and the Hill–Burton Trust Escrow Agreement. The parties established the fire and life safety escrow in response to HCA's concern that it would be required to install a fire sprinkling system or other safety equipment at the hospital following the purchase of the hospital. The parties created the Hill–Burton trust escrow to fund an irrevocable trust that would allow the United States government, if it so chose, to waive any right to reclaim certain grants previously made to St. Marks for the care of indigent patients under the Hill–Burton Act.

### A. Fire and Life Safety Escrow Agreement

The parties entered into the fire and life safety escrow agreement on December 31, 1987. Pursuant to that agreement, St. Marks delivered cash and securities in the amount of $1,500,000 to First Security Bank, the escrow agent. The agreement provided that HCA could claim the escrowed funds if, during the two year escrow period, HCA was required to install a fire sprinkler system or other fire safety equipment pursuant to: "(i) any statute, rule, regulation, code provision or ordinance, or (ii) any local, state or federal governmental body or authority with authority to enforce fire or life safety codes in Salt Lake City, Utah."

On February 6, 1989, HCA called a meeting with representatives of the State Fire Marshall's Office, the Utah Department of Health and the Salt Lake County Fire Department in order to determine whether HCA was required to install a fire sprinkler system at the hospital. On February 28, the State Fire Marshall sent a letter to HCA directing it to install a sprinkler system throughout the hospital pursuant to section 1.103(b) of the Uniform Fire Code (1985 edition).

On August 24, 1989, HCA tendered a "notice of claim" to St. Marks, informing it of the State Fire Marshall's directive that a fire sprinkler system be installed throughout the hospital. On August 30, St. Marks responded to HCA's claim, denying that HCA had any support for its claim, and charging that the alleged claim was effected only after HCA solicited the State Fire Marshall to search for code provisions that would require HCA to install the sprinkler system.

On January 8, 1990, St. Marks filed a complaint in district court, seeking a declaratory determination that St. Marks was entitled to the funds in the fire and life safety escrow, alleging that: (1) HCA failed to comply with the notice requirements set out in the escrow agreement; and (2) St. Marks was not required to indemnify HCA for capital expenditures required as a result of HCA's own actions after closing.[1]

---

**1.** Pursuant to a district court order, St. Marks's cause of action relating to the fire and life safety escrow, *St. Marks Charities v. Hospital Corp. of America and HCA Health Services of Utah, Inc.,* was consolidated with *HCA Health Services of Utah, Inc. and Hospital Corp. of America v. St. Marks Charities,* which involved the Hill–Burton escrow. Under that order, HCA was established

On April 27, 1990, HCA filed its answer and counterclaim, denying St. Marks's claim to the escrowed funds, and seeking a declaratory determination that it was entitled to the funds in the fire and life safety escrow for costs to be incurred by HCA in installing the fire sprinkler system at the hospital. On March 2, 1991, St. Marks filed a motion for summary judgment on the fire and life safety escrow, and on March 26, HCA filed a cross-motion for summary judgment on the same. Subsequently, on June 4, 1991, St. Marks withdrew its motion, citing questions of fact as to the notice issue, the sole basis for its motion.

On June 7, 1991, the district court held a hearing on HCA's motion for summary judgment. On that same day, St. Marks filed a motion for leave to amend its answer to assert additional affirmative defenses on the fire and life safety escrow claim.[2] On June 13, the court entered findings of fact, conclusions of law and an order granting partial summary judgment in favor of HCA on the fire and life safety escrow claim subject, however, to St. Marks's motion for leave to file an amended answer to HCA's amended complaint. A hearing on the motion to amend was heard by the court on July 12, and on August 9, the court entered findings of fact, conclusions of law and an order denying the said motion.

## B. Hill–Burton Trust Escrow Agreement

The Hill–Burton Trust Escrow Agreement was necessitated by the sale of the hospital, which triggered the right of the United States government to recover certain grants previously made to St. Marks for the care of indigent persons under the Hill–Burton Act. Under that act, the United States could waive its right to recapture the grants, provided that an irrevocable trust was funded with an amount twice the recapture amount. Accordingly, as required by the terms of the asset purchase agreement, St. Marks and HCA executed the Hill–Burton trust escrow agreement on December 31, 1987.

Pursuant to the escrow agreement, St. Marks delivered to the escrow agent, First Security Bank, cash and securities in the amount of $9,100,000. The funds were to be held by First Security Bank until instructed in writing as to the distribution of the said funds.

On July 27, 1988, St. Marks and HCA executed a trust agreement creating the Hill–Burton trust. Thereafter, on August 30, St. Marks and HCA instructed First Security Bank to transfer $6,757,680 of the escrowed funds into the Hill–Burton trust.[3] St. Marks also requested that HCA execute instructions directing the distribution of the remaining escrow funds, including all accrued interest, to St. Marks. HCA agreed to distribution of the funds to St. Marks, except for those funds representing the accrued interest on the funds paid to the trust to which it claimed the Hill–Burton trust was entitled pursuant to the escrow agreement.

On September 5, 1989, HCA filed a complaint seeking a declaratory determination that the Hill–Burton trust was entitled to the accrued interest on those funds paid to the trust. St. Marks filed an answer, counterclaim, and cross-claim, contending that it was entitled to the interest. On January 31, 1991, HCA moved the court for partial summary judgment on the Hill–Burton trust escrow claim. On March 2, St. Marks filed a cross-motion for summary judgment on the same. Following a hearing on May 16, 1991, the court entered findings of fact, conclusions of law and an order granting St. Marks's motion for summary judgment, denying HCA's motion for the same, and

---

as the plaintiff and counter-defendant, and St. Marks was established as the defendant and counter-plaintiff in the action.

**2.** After filing its answer and counterclaim to St. Marks's complaint on the fire and safety escrow claim, HCA, in its amended complaint, reasserted that it was entitled to declaratory relief on the fire and life safety escrow claim. St. Marks did not respond to the amended complaint and sought to do so by motion for leave to amend its answer.

**3.** Acknowledging the establishment of the irrevocable trust, the United States, on September 8, 1988, waived all rights of recovery to the Hill–Burton grants.

ordering that the interest remaining in escrow balance be disbursed to St. Marks.

On August 9, 1991, the district court entered a final order and judgment on the fire and life safety escrow claim and the Hill–Burton trust escrow claim and certified this action under Rule 54 of the Utah Rules of Civil Procedure.[4]

On appeal, St. Marks claims that the district court erred in: (1) denying its motion to amend its answer, and (2) granting summary judgment in favor of HCA on the fire and life safety escrow claim. HCA cross-appeals, claiming that the district court erred in granting summary judgment in favor of St. Marks on the Hill–Burton trust escrow claim.

## II. MOTION TO AMEND

■ St. Marks claims that the district court erred in denying its motion to amend its answer. "Leave to amend a pleading is a matter within the broad discretion of the trial court and we do not disturb its ruling unless appellant establishes an abuse of discretion resulting in prejudice." *Chadwick v. Nielsen*, 763 P.2d 817, 820 (Utah App.1988) (citing *Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983)).

As to the interrelation of amended pleadings and motions for summary judgment, the Utah Supreme Court has held that an "amendment of a pleading should not be allowed to defeat a motion for summary judgment if the amendment does not effect any substantial change in the issues as they were originally formulated in the pleadings." *Dupler v. Yates*, 10 Utah 2d 251, 351 P.2d 624, 637 (Utah 1960) (footnote omitted).

In the case at bar, the district court, in denying St. Marks's motion to amend its answer, specifically found that St. Marks's amended answer failed to effect any change in the issues before the court as to defeat the pending motion for summary judgment. The court stated:

7. The court has carefully reviewed St. Mark's Motion for Leave to Amend the Answer together with the Answer sought to be lodged by St. Mark's and finds that no additional fact questions were presented and no genuine issues of material fact are asserted or presented by St. Mark's in connection with its Motion to Amend the Answer. In point of fact, the Amended Answer is drawn almost entirely from the undisputed facts submitted to the court by the parties, and the court notes that the Memorandum of Points and Authorities in support of the Motion to Amend refers to and incorporates the exhibits which were filed by St. Marks in connection with its Motion for Summary Judgment.

8. The court therefore determines that the additional legal contentions incorporated in the Amended Answer as "Affirmative Defenses" would not change the disposition of the Motion for Summary Judgment. The court specifically finds that the contentions by St. Mark's that HCA violated the covenant of good faith and fair dealing or engaged

4. In order to certify an action under Rule 54(b) of the Utah Rules of Civil Procedure, the district court must direct final judgment with respect "to fewer than all of the claims or parties." Utah R.Civ.P. 54(b). In the case at bar, it is not apparent from the record why the district court certified this action under Rule 54, since it does not appear that there are any remaining claims or parties before the lower court. In its final order and judgment, the district court reserved jurisdiction to determine disputes, if any, which may arise concerning the release of funds under the fire and life safety escrow or the Hill–Burton escrow. However, such was unnecessary. The parties, in their respective pleadings, only sought declaratory relief as to which party was entitled to the funds in the fire and life safety escrow and the Hill–Burton trust escrow ac-

counts. Accordingly, once the district court had entered its final order and judgment ruling that HCA was entitled to the funds in the fire and life safety escrow that would be required to install the sprinkling system, and that St. Marks was entitled to all remaining funds in the Hill–Burton escrow, the court had granted the relief sought by the pleadings, and it was unnecessary for the court to reserve jurisdiction on these issues. *See* Utah Code Ann. § 78–33–1 (1992) ("The district courts ... shall have power to declare rights, status, and other legal relations, whether or not other relief is or could be claimed.... The declaration may be either affirmative or negative in form and effect; *and such declaration shall have the force and effect of a final judgment or decree.*").

in activities which frustrated the purpose of the contract do not rise to the level required by the court to exercise its discretion and permit the amendment.

Our review of the record in this case reveals that the district court's finding that St. Marks's amended answer did not effect any change in the issues before the district court was sufficiently supported by the evidence before it. Accordingly, we conclude that the court did not abuse its discretion in denying St. Marks's motion to amend.

## III. SUMMARY JUDGMENT

St. Marks appeals the district court's order and judgment awarding summary judgment to HCA on the fire and life safety escrow claim and ruling that HCA was entitled to those escrow funds required for the installation of a fire sprinkling system at the hospital. HCA cross-appeals the district court's order and judgment awarding St. Marks summary judgment on the Hill–Burton trust escrow claim and ruling that St. Marks was entitled to the accrued interest on all funds, including the interest on those funds paid to the Hill–Burton trust.

■ On review of a grant of summary judgment, our inquiry is whether there is any genuine issue as to any material fact, and if there is not, whether the moving party is entitled to judgment as a matter of law. *Thornock v. Cook,* 604 P.2d 934, 936 (Utah 1979). Since a challenge to summary judgment presents for review conclusions of law only, because, by definition, summary judgments do not resolve factual issues, we review those conclusions for correctness, according no deference to the trial court. *Bonham v. Morgan,* 788 P.2d 497, 499 (Utah 1989).

### A. Fire and Life Safety Escrow Agreement

■ St. Marks claims that the fire and life safety escrow agreement was ambiguous and therefore, summary judgment on that claim was precluded, citing *Colonial Leasing Co. v. Larsen Bros. Constr. Co.,* 731 P.2d 483 (Utah 1986). Specifically, it asserts that in entering into the fire and life safety escrow agreement, the parties intended that the escrow account would only indemnify HCA for those expenditures related to installation of an automatic sprinkler system required at the time of the sale of the hospital. St. Marks argues that since the State Fire Marshall determined prior to and shortly after the sale of the hospital that the hospital was in "substantial compliance with the fire regulations," HCA is not entitled to indemnification. HCA responds that the fire and life safety escrow agreement is unambiguous and specifically directs that HCA may claim the escrow funds if required to install such fire sprinkler system anytime during a two year period after the parties executed the agreement.

■ It is well settled that "[c]ontracts are to be construed in light of the reasonable expectations of the parties as evidenced by the purpose and language of the contract." *Nixon and Nixon, Inc. v. John New & Assocs.,* 641 P.2d 144, 146 (Utah 1982).

In the case at bar, the fire and life safety escrow agreement provides, in pertinent part:

> 2. *Indemnification of the Buyer Group.*
>
> . . . .
>
> (c) For the purposes of this Agreement, the term "Claim" shall mean the actual cost incurred by the Buyer Group or any member thereof for capital expenditures at the Hospital relating to the *fire sprinkler system,* smoke partitions, penetrations of rated walls or transfer switches to the emergency electrical system, and required (i) pursuant to any statute, rule, regulation, code provision or ordinance, or (ii) by any local, state, or Federal governmental body or authority with authority to enforce fire or life safety codes in Salt Lake City, Utah, including, without limitation, the Salt Lake County Fire Marshall, the Utah Fire Marshall, the Utah State Board of Health, the Salt Lake City Building Inspector's Office and the Salt Lake

City Electrical Inspector's Office; or (iii) by the Joint Commission on the Accreditation of Hospitals ("JCAH").

. . . .

4. *Escrow Period.* Subject to certain other provisions hereof, the period of escrow (the "Escrow Period") shall begin on the date hereof [December 31, 1987] and end two years after such date; provided, however, that if there is an outstanding Notice of Claim (as hereinafter defined) at the end of such two-year period, such period shall not end in respect of such Claim (as hereinafter defined) until such Claim is resolved.

5. *Pay Out of Cash in Respect of Claim and at End of Escrow Period.*

(a) If a member of the Buyer Group receives notice from any local, state or Federal governmental body or authority or any regulatory agency having jurisdiction over the Hospital or the JCAH that a capital expenditure which may constitute a Claim is or may be required to be made, such member of the Buyer Group shall notify the Seller (the "Notice of Claim") of the alleged required capital expenditure within the time, if any, permitted to contest such requirement. Seller shall then be entitled to pursue on HCA's behalf all reasonable legal and administrative reviews and appeals available to contest the validity of the capital expenditure requirement. . . .

(Emphasis added).

The terms of the escrow agreement are unambiguous and expressly provide for a two year escrow period during which HCA may claim indemnification for the installation of a sprinkler system if required by "(i) statute, rule, regulation, code provision or ordinance, or (ii) local, state or federal governmental body with authority to enforce fire or life safety codes. . . ." There is nothing in the escrow agreement to support St. Marks's claim that the parties intended that HCA would only be indemnified for those capital expenditures required

at the time of closing. In fact, to accept such construction would not only render the escrow period provision in the agreement superfluous, but would defeat the purpose of the escrow agreement itself since that agreement was to insure that certain funds would be available to HCA for a specified period following closing for required installation of fire safety equipment. Accordingly, we reject St. Marks's claim that the fire and life safety escrow agreement was ambiguous as to preclude summary judgment.

St. Marks also contends that summary judgment in favor of HCA on the fire and life safety escrow claim was improper since questions of fact remained as to whether HCA was obligated to install the fire sprinkler system at the hospital. Specifically, St. Marks argues that inconsistent positions taken by the State Fire Marshall as to whether HCA was required to install a fire sprinkler system precluded summary judgment in this action. We disagree.

It is undisputed that at the time of and shortly following the sale of the hospital, the position of the State Fire Marshall was that installation of a sprinkler system was only necessary "in those areas [of the hospital] undergoing new construction or remodeling changes." However, such position changed in February 1989, within the escrow period, when the State Fire Marshall notified HCA that it was required to install an automatic sprinkler system throughout the hospital pursuant to section 1.103(b) of the Uniform Fire Code (1985 edition).[5]

St. Marks claims, however, that the State Fire Marshall's directive cannot support a "claim" under the escrow agreement since, according to Steve Higley and John Elder, deputy state fire marshalls, such directive did not "constitute final agency action under [Utah Code Ann. § 63–46b–13 (1989) ]." We disagree. The escrow agreement does not require final agency action to support a claim. The escrow agreement only requires that capital expenditures relating to

---

**5.** Neither party disputes that section 1.103(b) was in effect and applicable to the hospital at all times relevant to this case.

installation of a sprinkler system be required "(i) pursuant to any statute, rule, regulation, code provision or ordinance, or (ii) by any local, state, or Federal governmental body or authority with authority to enforce fire or life safety codes in Salt Lake City, Utah, including, without limitation, the Salt Lake County Fire Marshall, *the Utah Fire Marshall*, the Utah State Board of Health, the Salt Lake City Building Inspector's Office and the Salt Lake City Electrical Inspector's Office...." (Emphasis added). In the instant case, the State Fire Marshall directed HCA to install a sprinkler system throughout the hospital pursuant to section 1.103(b) of the uniform fire code, and such plainly supported a claim under the escrow agreement.

Finally, St. Marks contends that the district court erred in granting summary judgment to HCA on the fire and life safety escrow claim, since the State Fire Marshall's directive to install the sprinkler system resulted from HCA soliciting the State Fire Marshall to search the codes for some provision which would require installation of the same. However, such argument fails to establish any dispute as to any material fact which would preclude summary judgment. Moreover, as correctly determined by the district court, "HCA was not expressly or impliedly prohibited under the terms of [the fire and life safety escrow] from inquiring of the State Fire Marshall concerning what requirements, if any, it was obligated to meet during the period of escrow." In fact, it is only logical that a purchaser of a building would inquire of appropriate authorities as to safety requirements, particularly where a fund had been established to satisfy such requirements. Therefore, we conclude that HCA's alleged solicitation of the State Fire Marshall did not preclude summary judgment in this action.

Accordingly, the trial court did not err in granting summary judgment and ruling that HCA was entitled to those funds in the fire and life safety escrow account required for the installation of a fire sprinkler system at the hospital because: (1) HCA was directed by the State Fire Marshall to install a fire sprinkler system in accordance with the uniform fire code; (2) such directive supported a claim under the escrow agreement; and (3) HCA tendered a notice of claim for such within the prescribed escrow period.

**B.  Hill–Burton Trust Escrow Agreement**

■ HCA cross-appeals the district court's order and judgment awarding St. Marks summary judgment on the Hill–Burton trust escrow claim. Specifically, HCA argues that the district court erred in interpreting the contracts between the parties and determining that St. Marks was entitled to the interest earned on those funds paid to the Hill–Burton trust. St. Marks responds that the court properly concluded that it was entitled to the accrued interest on those funds required to fund the trust.

There are three documents that are relevant to the disposition of the funds in question. First, the asset purchase agreement, the principal contract between the parties, provides:

> *Hill–Burton Grants.* Within a reasonable time after the date of the Closing, Seller shall establish and fully fund an irrevocable trust (the "Trust") for the benefit of the Hospital. The Trust shall be substantially in the form of Appendix 5.15 to this Agreement. Seller shall be reasonably diligent in its efforts to cause the Trust to be established. The Trust shall be in an amount sufficient to cause the United States of America to waive in its entirety any right of recovery it may have pursuant to Section 609 of the Public Health Service Act (the "PHS Act") as a result of Seller's sale of the Assets to Buyer; provided, however, that in no event shall the amount of the Trust be less than Five Million dollars ($5,000,-000).

Secondly, the Hill–Burton trust escrow agreement states:

> *Pay Out of Cash.* The Escrow Agent shall pay out all, or a portion, of the Escrowed Funds plus interest accrued thereon to the Trustee (as defined in the Trust) in accordance with written instructions to the Escrow Agent signed by

both HCA and Seller. HCA agrees to execute any such written instructions which are executed by Seller; provided that (i) such instructions direct the Trustee to use at least $5,000,000 of the Escrowed Funds to fund the Trust, and (ii) HCA shall have been reasonably satisfied that the United States Government shall waive in its entirety any right of recovery it may have pursuant to Section 609 of the Public Health Services Act (the "PHS Act") as a result of the sale by Seller of St. Marks Hospital. Any portion of the Escrowed Funds plus interest accrued thereon not so required to be paid to the Trustee shall be promptly paid by the Escrow Agent to the Seller.

Finally, the trust agreement between the parties provides:

[I]n the event the waiver of the right of recovery of the United States granted by the Secretary of Health and Human Services pursuant to section 609 of the Public Health Services Act is withdrawn, the Transferor shall have the right to terminate the trust and the funds held in trust shall upon written direction of [HCA] first be paid to the Government of the United States in satisfaction of any claim or liability of [HCA] in connection with such withdrawal and the balance of such funds shall then be returned to [St. Marks] or its successor in interest.

[8–11] It is well settled that:

Contracts should be construed so as to give effect to the parties' intentions, and such intent should be determined, if possible, by examining the written agreement executed by the parties. When agreements are executed "substantially contemporaneously and are clearly interrelated, they must be construed as a whole and harmonized, if possible."

*Verhoef v. Aston*, 740 P.2d 1342, 1344 (Utah App.1987) (quoting *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987) (citation omitted)). *See also Nish Noroian Farms v. Agricultural Labor Relations Bd.*, 35 Cal.3d 726, 201 Cal.Rptr. 1, 677 P.2d 1170, 1175 (Cal.1984) ("[M]ultiple writings must be considered together when part of the same contract."); *Cham-*

*bliss/Jenkins Assocs. v. Forster*, 650 P.2d 1315, 1318 (Colo.App.1982) ("When an agreement between parties is contained in more than one instrument, those instruments must be construed together as though they comprised a single document."). Moreover, in interpreting contracts, we first look to the four corners of the agreements to determine the intentions of the parties. *Ron Case Roofing and Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989) (citations omitted). The use of extrinsic evidence to determine the parties' intent is permitted only if the documents appear to incompletely express the parties' agreement or if they are ambiguous in expressing that agreement. *Id.* (citations omitted). *Accord Palmer v. Davis*, 808 P.2d 128, 132 (Utah App.), *cert. denied*, 817 P.2d 327 (Utah 1991).

HCA contends that the language in the trust escrow agreement that provides that "the escrow agent shall pay out all, or a portion, of the escrowed funds plus interest accrued thereon to the trustee" is dispositive of the parties' intention that HCA is entitled to the interest paid to the trust. We disagree. That language, when analyzed within the four corners of the trust escrow agreement, as well as the other related agreements, merely denotes the amount of funds available for distribution to the trust. Construing these interrelated agreements together, the trial court correctly concluded that the intent of the parties was that St. Marks, the party which funded the escrow account, would be entitled to any funds, including all accrued interest, that were not required to be paid to the trustee to fund the Hill–Burton trust. First, pursuant to the asset purchase agreement, St. Marks is only required to fund the trust with an amount sufficient to cause the United States to waive any right to recovery of the Hill–Burton grants. Second, the Hill–Burton trust escrow agreement specifically provides that St. Marks is entitled to any portion of those escrowed funds, including accrued interest, not required to be paid to the trust. Finally, the trust agreement states that if the waiver by the United

States government is withdrawn, St. Marks is entitled to the balance of the escrow funds after satisfying any claim or liability to the government.

Based on the foregoing, it would be unreasonable to conclude that HCA and St. Marks intended to pay the trust not only those funds which would effect the waiver by the United States, but also all accrued interest on the principal paid to the trust. To do so would result in a windfall to the trust at the expense of St. Marks, which clearly was not contemplated by the parties. Accordingly, the district court did not err in granting summary judgment and ordering that St. Marks was entitled to the balance in the escrow account representing accrued interest on those funds paid to the Hill–Burton trust.

## IV. CONCLUSION

The district court did not err in: (1) denying St. Marks's motion to amend its answer; (2) granting summary judgment in favor of HCA on the fire and life safety escrow claim; and (3) granting summary judgment in favor of St. Marks on the Hill–Burton trust escrow claim. Accordingly, we affirm the order and judgment of the court.

GARFF, J., concur.

BENCH, Judge (concurring specially):

I write separately to address an important issue involving appellate jurisdiction. The main opinion erroneously treats the decision of the trial court as a final appealable judgment. *See* note 4. Both parties, however, contend that various issues remain before the trial court concerning the claims addressed on appeal. For example, the parties dispute what portion of the funds in the fire and life safety escrow had to be expended on the fire sprinkling system. Inasmuch as the trial judge still has under advisement the release of the funds in escrow, the trial court's decision is clearly not final, either for purposes of direct appeal or rule 54(b) certification. *See Pate v. Marathon Steel Co.*, 692 P.2d 765, 768 (Utah 1984) (to be a final order for purposes of rule 54(b), order must "wholly dispose[ ] of one or more … claims or parties in the action").

Consequently, we do not have jurisdiction unless we invoke our discretion pursuant to Rule 5(a) of the Utah Rules of Appellate Procedure, and treat this matter as an interlocutory appeal.

A timely appeal from an order certified under Rule 54(b), Utah Rules of Civil Procedure, that the appellate court determines is not final may, in the discretion of the appellate court, be considered by the appellate court as a petition for permission to appeal an interlocutory order.

Rule 5(a), Utah R.App.P. (effective October 1, 1992).

Despite the impropriety of the rule 54(b) certification in this case, I believe an interlocutory appeal would be appropriate in this matter and therefore join the main opinion in reaching the merits of the appeal.