PAOLO SCIRPO & another [1] *vs.* GENEVIEVE McMILLAN, trustee.

Middlesex.    March 5, 1969. — April 14, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Landlord and Tenant,* Extension of lease, Construction of lease. *Mistake. Waiver. Evidence,* Extrinsic affecting writing.

A lease stating its term as "For a period of five years starting . . . [on a specified date] with an option of further extension" gave the lessee an option to extend the lease for a five year period for the same monthly rental as during the original period, not merely an opportunity to be the first with whom the lessor would negotiate respecting a new lease. [658–660]

Mistake of a lessor as to the meaning of a provision of the lease which, properly interpreted, gave the lessee an option to extend the term was not ground for denying the right of the lessee to the extension. [660]

An allegation in a bill in equity for a declaratory decree by a lessee against the lessor, that a certain unambiguous provision of the lease was ambiguous, could not make it ambiguous, nor did the allegation constitute a waiver of the plaintiff's right to a declaration as to the meaning of the provision. [660–661]

At the trial of a suit in equity by a lessee against the lessor for a declaratory decree as to the construction of an unambiguous provision of the lease, a letter from the lessor's attorney to the lessee purportedly interpreting such provision, whether or not properly admitted in evidence, could not be considered in construing the provision. [661]

———

[1] Zenaide Scirpo, Paolo's wife.

Under a lease "For a period of five years starting . . . [on a specified date] with an option of further extension," the option was effectively exercised by the lessee before the expiration of the five year period by a statement by him to the lessor that he had a right and intended to continue in occupancy for a further period of five years at the same rental and by his filing a bill in equity for a declaratory decree to that effect.  [661]

BILL IN EQUITY filed in the Superior Court on June 7, 1967. The suit was heard by *DeSaulnier,* J.

*Richard L. Seegel* for the plaintiffs.

*William M. O'Brien* for the defendant.

WHITTEMORE, J.  The issue on the plaintiffs' appeal from a final decree in a suit for a declaratory decree is the construction of the provision in a lease made on June 17, 1962, of premises in Cambridge under which Paolo Scirpo (hereinafter the plaintiff) was lessee and the defendant was lessor reading: "For a period of five years stàrting Sept 15 1962 *with an option of further extension*" (emphasis supplied).

The evidence is before us.  The judge made a report of material facts.  The lease had been drawn by the defendant. The judge, after stating the plaintiff's contention that he was entitled to a second five year term on the same terms and conditions, found that the defendant never agreed to this and that the words emphasized above mean only that the parties were to negotiate with respect of the lease.  His further finding that the parties understood that this was the meaning is based on a letter written on June 27, 1962, to the plaintiff by an attorney whom the defendant consulted about the lease,[2] taken with the circumstance that the plaintiff after receiving the letter did not "place the defendant on notice that he did not agree to the terms of the lease and that he did not intend to be bound by it."  The judge found that the plaintiff had not begun his reconstruc-

---

[2] The letter stated that the attorney would like to state his understanding of a couple of provisions "which seem possibly to be ambiguous.  First, as to the provision for a five-year term 'with an option of further extension,' I understand this to mean that Mrs. McMillan has agreed to consult with you first at the end of five years before offering the property to other people and trying to agree with you on a new lease.  If she cannot agree with you I would think she would be at liberty then to offer it to others on the same terms that she had offered it to you."

tion under the lease to make the premises useful as his intended coffee shop or Espresso bar. The defendant also signed the letter and delivered it to the plaintiff. He testified that she asked him to sign it and that he declined, saying, "We already make one contract, why another one?" The plaintiff objected and excepted to the admission in evidence of the letter.

We think the plaintiff's construction is right. In *Cunningham* v. *Pattee*, 99 Mass. 248, 250, 252, this court construed the clause," ' . . . to renew said indenture [of sub-lease] for such further term as . . . [the lessors'] leasehold estate in the premises may be renewed or extended.' " The court held that the word "renewal" "imports the giving a new lease like the old one, with the same terms and stipulations . . . [except that] [t]he renewal covenant is not to be inserted in the new lease." That rule was restated as "generally recognized as sound in law" in *Shannon* v. *Jacobson*, 262 Mass. 463, 465. See *Gardella* v. *Greenburg*, 242 Mass. 405, 407. In *Mutual Paper Co.* v. *Hoague-Sprague Corp.* 297 Mass. 294, this court construed a provision giving the lessee "the right to an extension of said term" with an elaborate method for determining the rent in the extended term. The defendant (an assignee of the lessor) conceded that a general covenant of renewal implies an additional term equal to the first and upon the same terms, but contended that because of the difference between a renewal and extension the rule of the *Cunningham* case did not apply. The court said at p. 299, "No reason is perceived why, as in the case of renewals, where no term is named in the extension provision, the extension term should not be the same term as that in the original lease."

The distinction between renewal and extension relates to whether a new instrument is called for (see *Gibbs Realty & Investment Corp.* v. *Carvel Stores Realty Corp.* 351 Mass. 684, 685–686, and cases cited), and has no bearing on the construction of a general clause for a further term. No case has been found in which the parties had not defined to some extent the terms to be applicable in the renewal

or extension period. But the principle appears equally applicable to the general clause here used.

The evidence clearly permitted the finding that the defendant did not intend to agree to a five year extension at least on the same terms. But both parties intended to agree to the lease they signed and delivered. The finding that the lessee understood that the lease meant what the attorney's letter said it meant is unjustified. The lessee testified that at the time of signing he objected to the five year term saying he had agreed to an increase in rent from $190 (first discussed) to $300 a month because of his understanding that it would be ten years and that the defendant had said, in respect of the provision she had written, "This means the same thing." This by itself could of course be disbelieved, but the plaintiff's testimony of his understanding of what the lease meant was expressly confirmed by the defendant. She testified that she went to the attorney because she "knew that Mr. Scirpo thought it was a ten year lease and . . . [she] only intended it to be five." [3]

The mistake of law by one party to the contract was not a ground for avoiding it. *John J. Bowes Co.* v. *Milton,* 255 Mass. 228, 233–234. See *Eno* v. *Prime Mfg. Co.* 317 Mass. 646, 650–651, and cases cited; *Cohen* v. *Santoianni,* 330 Mass. 187, 193; *Century Plastic Corp.* v. *Tupper Corp.* 333 Mass. 531, 533–534.

The bill of complaint, filed June 7, 1967, alleged that on April 1, 1967, the defendant had sent the plaintiff a letter stating that she did not intend to renew; also, that the intention of the parties had been for a ten year term and that the defendant had intentionally and wrongfully used ambiguous language in drawing the lease to induce the expenditure of $15,000 renovation expense by both plaintiffs.

---

[3] The preceding examination was this: Q. "Were you bothered . . . about the meaning of the language . . . ?" A. "Well, I was afraid it might be interpreted by Mr. Scirpo who always said 'ten years' and I always said, 'five years.'" Q. "Was this why you showed the lease to . . . [the attorney]?" A. "Yes, to make it clear." Q. "Because at the time . . . you knew that Mr. Scirpo thought it was a ten year lease?" A. "And I was afraid not to have written the right legal word because I don't consider myself a lawyer."

It alleged a controversy as to the term of the lease because of ambiguity. It prayed for restraint of any eviction proceedings and for an adjudication that the plaintiffs held a lease for ten years from September 15, 1962, at a rental of $300 a month, and for a reformation of the lease; also, for other declarations "deem[ed] meet and proper." We hold that the allegation in the bill that the term that now requires construction was ambiguous could not make it so. It did not waive the right to a declaration as to what the lease meant. We think the use of the word "further" before "extension" did not import an ambiguity.

It is of no importance whether the attorney's letter was admissible on any aspect of the case. The parol evidence rule is one of substantive law and its application is unaffected by the presence in the case of evidence incompetent to vary the effect of the writing. *Dekofski* v. *Leite,* 336 Mass. 127, 130.

The evidence showed that after the notice of April 1, 1967, the parties discussed the lease and that the lessee emphatically stated his position that he had a right and intended to continue in occupancy for a further period of five years at the same rental. This, with the bill of complaint, was sufficient notice of exercise of the option to extend. See *Stone* v. *St. Louis Stamping Co.* 155 Mass. 267, 270–271. Apparently the plaintiff has continued his occupation and paid the $300 a month rent, pending the outcome of this suit.

The final decree is reversed. A decree shall enter to the effect that the plaintiff has a right to continued occupancy for a term of five years from September 15, 1967, at $300 a month rent.

*So ordered.*