2000 UT App 291

**LITTLE CAESAR ENTERPRISES, INC., a Michigan corporation, Plaintiff and Appellee,**

v.

**BELL CANYON SHOPPING CENTER, L.C., a Utah limited liability company, Defendant and Appellant.**

Bell Canyon Shopping Center, L.C., a Utah limited liability company, Counter–plaintiff,

v.

Little Caesar Enterprises, Inc., a Michigan corporation, Counter–defendant.

No. 990827–CA.

Court of Appeals of Utah.

Oct. 26, 2000.

Charles W. Dahlquist and Merrill F. Nelson, Kirton & McConkie, Salt Lake City, for Appellant.

Ronald G. Russell and Brett J. Swanson, Parr, Waddoups, Brown, Gee, Loveless, Salt Lake City, for Appellee.

Before GREENWOOD, P.J. and BILLINGS, and DAVIS, JJ.

OPINION

GREENWOOD, Presiding Judge:

¶1 Bell Canyon Shopping Center, L.C. ("Bell Canyon") appeals from a grant of summary judgment in favor of its lessee, Little Caesar Enterprises, Inc. ("Little Caesar"), enforcing Little Caesar's right to exercise an option to renew its lease. We affirm.

FACTS

¶2 Little Caesar leased commercial property in the Bell Canyon Shopping Center. In December 1992, Little Caesar entered into negotiations with Wallace Associates Management, to extend its lease of the property. A new lease (the "1993 Lease") was executed in February or March of 1993. Bell Canyon subsequently purchased the property from Wallace Associates Management and thereafter succeeded to the rights and interests of the landlord under the 1993 Lease.

¶3 The 1993 Lease provided for an original term of five years from April 1, 1993 to March 31, 1998. Prior to the 1993 Lease, Little Caesar had paid $1,350.65 per month in total rent. However, paragraph three of an Addendum to the 1993 Lease states that from January 1, 1993 until the end of the 1993 Lease, the "*minimum rent* payable for the remainder of the existing Lease term shall be reduced as of January 1, 1993, from $1,350.65 to $1,190.00 per month." (Emphasis added.) Consistent with this language, the 1993 Lease states that the *basic monthly rent* is $1,190.00 per month. The 1993 Lease is a standard shopping center lease form designed to allow percentage rent in addition to the base rent, based on a percentage of

sales proceeds. The 1993 Lease, however, does not require Little Caesar to pay any percentage rent during the initial term.[1] Thus, the total rent that Little Caesar paid to Bell Canyon each month under the 1993 Lease was $1,190.00.

¶4 Paragraph four of the Addendum grants Little Caesar two renewal options, each for a five-year period. The renewal provision states the following:

The Minimum Rent for the first option period shall be at a market rate mutually agreed upon by Tenant and Landlord. In the first option period, the Minimum Rent shall not be higher than $11.00 per square foot.... Market rates shall be at the then prevailing market rates for similar space in similar shopping centers within 5 miles of the Shopping Center. Landlord and Tenant shall mutually agree on the market rate within 30 days of Tenant's notification to Landlord that Tenant wishes to exercise an option period.

¶5 On November 25, 1997, Little Caesar notified Bell Canyon that it intended to exercise the first option to extend the 1993 Lease. Little Caesar asked Bell Canyon to mutually agree on a rental rate, but stated that it interpreted the renewal provision to mean that the basic monthly rent could not exceed $11 per square foot.

¶6 Bell Canyon notified Little Caesar that it disagreed with Little Caesar's interpretation of the renewal provision language. Bell Canyon asserted that $11 per square foot was the least amount that the rent could be because of the renewal provision's use of the term "minimum rent." Consistent with its interpretation, Bell Canyon offered to renew the lease at $19 per square foot.

¶7 Little Caesar responded by citing paragraph three of the Addendum as evidence

1. The 1993 Lease states in part as follows:
   1. *Definitions:* ...
   "*Basic Monthly Rent*" means the following amount(s) per calendar month for the period(s) indicated, subject to Paragraph 4.2:

   | Period(s) | Basic Monthly Rent |
   |---|---|
   | Years 1–5 | $1,190.00 |

   ...
   "*Percentage Rent*" means, during each full or partial calendar year during the Term, *zero* percent (*0%*) of the amount by which "Gross

Sales," as defined in Paragraph 4.3, exceeds the Basic Monthly Rent actually paid by Tenant for such full or partial calendar year.

   ...
   4.3 *Percentage Rent.* Deleted
   4.3.1 *Calculation and Payment of Percentage Rent.* Deleted
   4.3.2 *Definition of Gross Sales.* Deleted
   4.3.3 *Deductions and Exclusions From Gross Sales.* Deleted

that "minimum rent" and "basic monthly rent" are interchangeable. Consistent with its interpretation, Little Caesar agreed to pay the maximum rent required under the renewal provision, $11 per square foot.

¶ 8 On March 24, 1998, Little Caesar brought an action seeking a declaratory judgment that it had properly exercised its right to extend the lease and that the monthly rent for the first option period could not exceed $11 per square foot. Subsequently, both parties moved for summary judgment. In support of its motion, Little Caesar submitted the affidavit of Mark Whittle, who negotiated the 1993 Lease with Wallace Associates Management, regarding the circumstances of those negotiations. Bell Canyon moved to strike Mark Whittle's affidavit on the grounds that the parol evidence rule precludes consideration of extrinsic evidence absent a determination that the contract is ambiguous.

¶ 9 The trial court granted Little Caesar's summary judgment motion, ruling that Little Caesar properly exercised its option to extend the lease; the total monthly rent for the option period is $11 per square foot; and the 1993 Lease provisions, including deletion of percentage rent, would continue through the option period. On this appeal, Bell Canyon asserts that the trial court erred by enforcing Little Caesar's exercise of the renewal option and in setting the rental rate as a matter of law because the renewal provision fails to provide a sufficient mechanism to determine rent other than agreement by the parties, and the parties failed to agree.[2]

## STANDARD OF REVIEW

■ ¶ 10 "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Surety Underwriters v. E & C Trucking, Inc.*, 2000 UT 71, ¶ 15, 10 P.3d 338. We grant no deference to the trial court in determining whether disputed issues of material fact exist or whether the moving party is entitled to judgment as a matter of law. *See Brown's Shoe Fit Co. v. Olch*, 955 P.2d 357, 362 (Utah Ct.App.1998). Also, "[w]e review the trial court's interpretation of [a contract] for correctness, according no deference to the court's conclusions of law." *Peirce v. Peirce*, 2000 UT 7, ¶ 18, 994 P.2d 193.

## ANALYSIS

■ ¶ 11 Little Caesar argues that the use of "minimum rent" in paragraph three of the Addendum indicates that "basic monthly rent" and "minimum rent" are interchangeable terms, and therefore, under the renewal provision basic monthly rent cannot be greater than $11 per square foot. Little Caesar also maintains that since the parties explicitly deleted percentage rent from the 1993 Lease and did not mention it in the renewal provision, percentage rent does not apply in

2. Bell Canyon also argues that the trial court erred by refusing to strike Mark Whittle's affidavit. Bell Canyon asserts that a trial court must first find contract language to be ambiguous before it considers extrinsic evidence.

The trial court never formally ruled that the contract language was ambiguous, but rather said that to the extent the contract was ambiguous, it considered Whittle's affidavit to help clarify. The trial court cited *Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264 (Utah 1995), as authority. *Ward* states that a trial court must consider any relevant evidence when determining whether a contract is ambiguous. *See id.* at 268.

Bell Canyon seems to concede that *Ward* would give the trial court authority to consider Whittle's affidavit if *Ward* were still binding law. However, Bell Canyon argues that *Ward* was implicitly overturned by *Interwest Constr. v. Palmer*, 923 P.2d 1350 (Utah 1996), which states

that "[o]nce a contract is found to be ambiguous, a court may consider extrinsic evidence to determine its meaning." *Id.* at 1359; *see also Dixon v. Pro Image, Inc.*, 1999 UT 89, ¶ 14, 987 P.2d 48 (stating that " '[w]hen a contract provision is ambiguous ... extrinsic evidence is admissible to explain the intent of the parties' " (citation omitted; second alteration in original)). Bell Canyon argues that *Palmer* requires that a trial court first find that contract language is ambiguous before it considers extrinsic evidence.

However, we need not decide whether *Ward* or *Palmer* governs the use of Whittle's affidavit in this case. We conclude that the contract is unambiguous as a matter of law, and thus, that the trial court did not need to refer to Whittle's affidavit to interpret the contract. Therefore, we need not, and do not, decide whether the trial court erred by refusing to strike Whittle's affidavit.

the option period. Thus, Little Caesar concludes that because the renewal provision provides that the maximum total monthly rent is $11 per square foot and it offered to pay this maximum, the total monthly rent for the renewal option term should be $11 per square foot as a matter of law.

¶ 12 Bell Canyon conceded in oral arguments that "minimum rent" and "basic monthly rent" are interchangeable under the 1993 Lease and, consequently, also under the renewal provision. However, Bell Canyon cites *Pingree v. Continental Group of Utah, Inc.*, 558 P.2d 1317 (Utah 1976), to argue that because the renewal provision's method to determine the rental rate is vague and indefinite, the parties' failure to agree renders the renewal option unenforceable. We disagree.

¶ 13 In *Pingree*, the lessee had an option to renew on the same terms and conditions as the original lease except "that the rental amount [would] be renegotiated; however, maximum total monthly rental [could] not exceed $900 per month." *Id.* at 1320. The lessee offered to pay $500 per month and the lessor demanded the maximum $900 per month. *See id.* at 1320–21. The only mechanism in the contract to determine the actual renewal rent was a provision that "[f]actors of tax increase, costs of business increases or decreases, business volume and success, insurance costs and other reasonable allowances, will be the basis for terms of negotiation." *Id.* at 1320. The Utah Supreme Court adopted the majority view that to be enforceable, the renewal option must "specify ... the rate of rent to be paid with such a degree of certainty and definiteness that nothing is left to future determination." *Id.* at 1321. Bell Canyon argues that the failure of the parties to agree in this case similarly makes the renewal provision unenforceable.

■ ¶ 14 *Pingree*, however, is distinguishable given the facts presented. In *Pingree*, the lessor demanded the maximum rent allowed by the renewal provision and the lessee offered to pay less than the maximum. In this case, the lessee, Little Caesar, offered to pay the maximum rent allowed by the renewal provision, but the lessor, Bell Canyon, demanded more than the $11 per square foot maximum. This distinction is pivotal.

When a bargained-for term of a renewal provision sets a range within which negotiations for a rental rate must take place, the lessor may not render the renewal provision unenforceable simply by refusing to negotiate within the specified range and insisting on rent exceeding the maximum allowed by the contract. The " 'covenant of good faith and fair dealing inheres in most, if not all, contractual relationships.' " *Brown's Shoe*, 955 P.2d at 366 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199–200 (Utah 1991)). Application of this covenant means that " 'each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract.' " *Id.* It would be bad faith to deny a lessee the right to renew its lease by simply refusing to negotiate within the bargained-for range of options. *See id.* Here, Little Caesar agreed to pay the maximum rent allowed by the renewal provision. There is nothing uncertain or indefinite in that offer, nor is there any doubt of its compliance with the terms of the renewal provision. Therefore, the trial court correctly determined the basic monthly rent for the renewal provision to be $11 per square foot.

■ ¶ 15 Bell Canyon also argues that even if the maximum basic rent is $11 per square foot, the option provision is nevertheless unenforceable under *Pingree* and *Brown's Shoe*, because it is uncertain if percentage rent applies to the option period, or, if it does, what the percentage should be.

¶ 16 In *Brown's Shoe*, this court decided whether a renewal provision was too vague and indefinite to enforce under the rule specified in *Pingree*. *See id.* at 364. The option provision in *Brown's Shoe* neither specified percentage rent nor provided a mechanism for determining what percentage rent should be added to the base rental rate of $24 per square foot. *See id.* This court held that "the lack of a rental term or a mechanism for determining the rental term ... makes the [renewal provision] too vague and indefinite for specific enforcement." *Id.* at 365. Bell Canyon argues that because there is similarly no specified percentage rent nor mecha-

nism for determining it in the renewal provision, the renewal provision is unenforceable.

 ¶ 17 We agree that if percentage rent were to apply to the renewal provision, *Brown's Shoe* would render the renewal provision unenforceable because the parties neither agreed upon the amount of percentage rent nor specified a sufficient mechanism for determining the percentage rent absent agreement. However, based on our review of the documents in this case and applicable case law, we conclude that percentage rent does not apply to the option provision. It has been long settled in Utah that " '[w]here the covenant for a renewal is general and does not state the terms of the renewal lease, the new lease is to be upon the same general terms and conditions as the old lease.' " *Cummings v. Rytting*, 116 Utah 1, 207 P.2d 804, 805 (1949).[3] Many other jurisdictions similarly hold that "a covenant of renewal in a lease which fails to provide the terms of renewal implies that renewal will be 'upon the same terms as provided in the original lease.' " *Idol v. Little*, 100 N.C.App. 442, 396 S.E.2d 632, 633 (1990) (citation omitted). *See also Johnson v. Hudson*, 420 So.2d 85, 87 (Ala.1982); *Yamin v. Levine*, 120 Colo. 35, 206 P.2d 596, 597 (1949); *Edgewater Enterprises, Inc. v. Holler*, 426 So.2d 980, 981 (Fla.Ct.App.1982); *Scirpo v. McMillan*, 355 Mass. 657, 247 N.E.2d 368, 370 (1969); *Starr v. Holck*, 318 Mich. 452, 28 N.W.2d 289, 292 (1947); *Bishop Cafeteria Co. of Omaha v. Ford*, 177 Neb. 600, 129 N.W.2d 581, 587 (1964); *Aldridge v. Young*, 689 S.W.2d 342, 347 (Tex.Ct.App.1985). Moreover, "where uncertainty exists, the tenant is favored and not the landlord." *Russell v. Valentine*, 14 Utah 2d 26, 376 P.2d 548, 549 (1962). *See also Buck v. Cardwell*, 161 Cal.App.2d 830, 327 P.2d 223, 226 (1958); *Thornton v. Ellis*, 184 Ga.App. 884, 363 S.E.2d 584, 585 (1987); *Kaybill Corp., Inc. v. Cherne*, 24 Ill.App.3d 309, 320 N.E.2d 598, 606 (1974); *Kearney v. Hare*, 265 N.C. 570, 144 S.E.2d 636, 639 (1965). Therefore, percentage rent does not apply to the renewal provision.

**3.** Bell Canyon argues that *Pingree* and *Brown's Shoe* overturn *Cummings,* but *Cummings* deals with cases where the option provision is silent about whether a term in the original lease applies in the option period, whereas *Pingree* and

## CONCLUSION

¶ 18 The trial court correctly granted Little Caesar's motion for summary judgment. The renewal provision was enforceable because Little Caesar offered to pay the maximum rent payable under the provision and Bell Canyon could not lawfully refuse to accept that offer. Furthermore, as in the original 1993 Lease, Little Caesar was not required to pay any percentage rent during the option period. We therefore affirm.

¶ 19 WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.

*Brown's Shoe* deal with option provisions that have terms that are either included but unclear or require future negotiation and agreement by the parties. *See Pingree*, 558 P.2d at 1320–21; *Brown's Shoe*, 955 P.2d at 360.