2001 UT App 128

**KEITH JORGENSEN'S, INC.,**
**Plaintiff and Appellant,**

v.

**OGDEN CITY MALL COMPANY, a Utah limited partnership dba Ogden City Mall; Ernest W. Hahn, Inc., a California corporation; Fashion Place Associates, a Utah limited partnership dba Fashion Place Mall; D.H. Entertainment Associates, Inc., a Utah corporation; B & T Entertainment, Inc., a Utah corporation; Brad Dennis; Corwin Hair; Stanley K. Beagley; and Kenneth R. Turner, Defendants and Appellees.**

No. 20000072–CA.

Court of Appeals of Utah.

April 19, 2001.

874

Evan A. Schmutz, Hill, Harrison, Johnson & Schmutz, Provo, for Appellant.

J. Randall Call and James A. Boevers, Prince, Yeates & Geldzahler, Salt Lake City, for Appellees.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Keith Jorgensen's, Inc. (Jorgensen)[1] appeals the summary judgments granted to Fashion Place Mall and Ogden City Mall (Mall Defendants)[2] on Jorgensen's breach of lease and breach of implied covenant of good faith and fair dealing claims. In addition, Jorgensen appeals the trial court's award of attorney fees to Mall Defendants and denial of attorney fees to Jorgensen. We affirm and remand for a determination of reasonable attorney fees on appeal.

## BACKGROUND

¶ 2 Jorgensen enters into agreements with licensees to operate home music entertainment stores under the Jorgensen trade name. In the early 1980s, Jorgensen entered into a license agreement with D.H. Entertainment Associates, Inc. (D.H.). Subsequently, D.H. and Jorgensen entered into a sublicense agreement with B & T Entertainment, Inc. (B & T).

¶ 3 The license agreements gave D.H. and B & T the exclusive right to use the Jorgensen name in Salt Lake, Weber, and Davis counties and retain profits from operating stores in Fashion Place Mall (Fashion Place) and Ogden City Mall (Ogden Mall). In return, the agreements required D.H. and B & T to pay Jorgensen $4,000 monthly and to fully perform the leases which Jorgensen retained in the name of the corporation.

¶ 4 D.H. operated the Fashion Place store. In July 1986, Jorgensen entered into the lease, listing Jorgensen as tenant, with Fashion Place. The lease term was five years ending June 30, 1991, and contained an option to extend if Jorgensen, as named tenant, met certain requirements including providing written notice six months but not more than a year prior to the lease's expiration. During the lease term, Jorgensen had no further contact with Fashion Place about the lease's status. Before Jorgensen's lease with Fashion Place expired, Fashion Place began lease renewal negotiations with D.H. Fashion Place and D.H. subsequently entered into a lease which listed D.H. as tenant dba Keith Jorgensen's, Inc. This lease went into effect on October 2, 1991.

¶ 5 B & T operated the Ogden Mall store. Jorgensen entered into the lease with Ogden Mall in July 1986. The lease listed Jorgensen as tenant and was for a six-year term ending June 30, 1992. During the lease term, Jorgensen had no further contact with Ogden Mall about the lease's status. On October 2, 1991, Ogden Mall and D.H., B & T's licensor, entered into a termination and surrender of lease agreement (Termination Agreement). About the same time, Ogden Mall entered into a lease with B & T for a different space in the mall. This lease went into effect on October 9, 1991.

¶ 6 In August 1994, D.H. and B & T terminated their license agreements with Jorgensen. Jorgensen then checked the status of

---

1. For convenience we refer to Keith Jorgensen's, Inc., the corporation, and Keith Jorgensen, the person, as Jorgensen although the corporation is the Appellant.

2. Ernest W. Hahn, Inc., a California corporation and the general partner of Fashion Place Mall and Ogden City Mall, is also an Appellee. For convenience we refer to Appellees collectively as Mall Defendants.

his leases with Fashion Place and Ogden Mall and discovered the Termination Agreement and the leases Mall Defendants executed with D.H. and B & T. In response, Jorgensen brought breach of lease and breach of covenant of good faith and fair dealing claims against Mall Defendants. Jorgensen also brought conspiracy to defraud and negligence claims against Mall Defendants.[3]

¶ 7 The trial court granted summary judgment to Mall Defendants on the breach of lease claims because D.H. and B & T could not bind, and therefore, could not renew or extend Jorgensen's leases. The trial court also granted summary judgment to Mall Defendants on Jorgensen's breach of covenant of good faith and fair dealing claims. The court determined Mall Defendants did not proceed in a manner inconsistent with Jorgensen's justified expectations.

¶ 8 In January 1998, Mall Defendants filed counterclaims against Jorgensen.[4] The occupancy counterclaims asserted Jorgensen breached the leases because he subleased to D.H. and B & T without Mall Defendants' consent. The indemnity counterclaims asserted the leases required Jorgensen to indemnify Mall Defendants for claims related to the leases. Jorgensen prevailed on the occupancy counterclaims, and Mall Defendants prevailed on the indemnity counterclaims.

¶ 9 The trial court ordered Jorgensen to pay Mall Defendants' attorney fees on the negligence, breach of lease, and conspiracy to defraud claims. The trial court also denied Jorgensen's attorney fees on the occupancy counterclaims because Jorgensen failed to properly allocate fees and because the fees were unreasonable. Jorgensen appeals the trial court's grant of Mall Defendants' motions for summary judgment, the court's award of attorney fees to Mall Defendants, and denial of attorney fees to Jorgensen.

### ISSUES AND STANDARDS OF REVIEW

¶ 10 In deciding whether the trial court properly granted summary judgment

to Mall Defendants on Jorgensen's breach of lease and covenant of good faith and fair dealing claims:

> "[W]e view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." We grant no deference to the trial court in determining whether disputed issues of material fact exist or whether the moving party is entitled to judgment as a matter of law.

*Little Caesar Enters., Inc. v. Bell Canyon Shopping Ctr., L.C.*, 2000 UT App 291, ¶ 10, 13 P.3d 600 (internal citation omitted). We also " 'review the trial court's interpretation of [a contract] for correctness, according no deference to the court's conclusions of law.' " *Id.* (alteration in original) (quoting *Peirce v. Peirce*, 2000 UT 7, ¶ 18, 994 P.2d 193).

¶ 11 The trial court's decision to award attorney fees to Mall Defendants and deny fees to Jorgensen are questions of law which we review for correctness. *See Dejavue, Inc. v. U.S. Energy Corp.*, 1999 UT App 355, ¶ 8, 993 P.2d 222. A trial court also has " 'broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard.' " *Id.* (quoting *Dixie State Bank v. Bracken*, 764 P.2d 985, 991 (Utah 1988)). "[T]he standard of review on appeal of [the amount of] a trial court's award of attorney fees is patent error or clear abuse of discretion." *Valcarce v. Fitzgerald*, 961 P.2d 305, 316 (Utah 1998) (citations and internal quotations omitted).

### ANALYSIS

#### I. Breach of Lease Claims

¶ 12 Jorgensen argues the trial court erred in concluding there were no genuine issues of material fact on his breach of lease claims.

##### A. The Fashion Place Lease

¶ 13 Jorgensen first argues the trial court erred in concluding as a matter of law

---

3. The trial court dismissed these claims, and Jorgensen does not appeal the dismissals.

4. Mall Defendants also brought cross-claims against D.H. and B & T. The parties settled these claims.

that his lease with Fashion Place expired, and D.H. did not renew or extend Jorgensen's lease. The license agreement provides:

> Licensee agrees that in the event its business is to be located at a site where Jorgensen presently has or shall obtain a leasehold interest as a tenant, then Licensee shall, upon entry of such premises and throughout the term of this Agreement, timely pay all rents and other amounts due under such lease agreement, and fully perform said lease on behalf of the Lessee therein.

The agreement also provides:

> Nothing in this Agreement shall be construed as creating a relationship of principal and agent, employer and employee, franchisor and franchisee, or master and servant.... Licensee is an independent contractor and shall be deemed an independent contractor at all times with respect to the performance of its obligations hereunder. *Licensee shall have no express or implied right or authority to assume or create any obligation on behalf of Jorgensen or to hold itself out as Jorgensen's principal, agent, employer, employee, franchisor, franchisee, master or servant.*

(Emphasis added.)

¶ 14 The trial court initially found an ambiguity in the license agreement.[5] However, we conclude the license agreement unambiguously provides that D.H. had no authority to bind Jorgensen either in writing or by conduct. Therefore, we conclude D.H. did not renew or extend Jorgensen's lease during negotiations with Fashion Place representatives.

¶ 15 In addition to arguing D.H. renewed Jorgensen's lease in negotiations with Fashion Place representatives, Jorgensen argues his lease was renewed by D.H. holding over. However, to conclude D.H. could bind Jorgensen to a new lease term by holding over would be inconsistent with the license agreement. Furthermore, a holdover tenancy will not renew a lease when the parties intended to negotiate a new lease. *See Heral v. Smith*, 33 Ark.App. 143, 803 S.W.2d 938, 940 (1991) (refusing to overturn trial court's finding parties intended month-to-month tenancy where evidence demonstrated parties unsuccessfully attempted to renegotiate lease and did not intend to enter into year-to-year tenancy); *Donnelly Adver. Corp. of Md. v. Flaccomio*, 216 Md. 113, 140 A.2d 165, 169 (1958) (holding landlord is entitled to treat tenant as holding over for another year unless landlord has consented to month-to-month tenancy or parties were engaged in negotiations to renew lease when term ended).

¶ 16 Significantly, in the present case, Fashion Place and D.H. negotiated a new lease which was effective October 2, 1991. Viewing the facts in a light most favorable to Jorgensen, the parties did not intend any holdover to renew Jorgensen's lease. Therefore, we conclude as a matter of law any

---

5. Consequently, the trial court denied Fashion Place's first summary judgment motion. However, the court subsequently concluded Jorgensen's deposition resolved the ambiguity and granted summary judgment to Fashion Place. Jorgensen testified:

Q. [By Ms. McMinimee] [I]n your mind could they bind you?
A. [By Jorgensen] No.
Q. So they couldn't sign a promissory note on your behalf?
Mr. Schmutz: Again, it calls for a legal conclusion.
Q. (By Ms. McMinimee) When I say yours, again I am talking about the company.
A. No, they could not.
Q. And that was true under the oral license agreement as well?
A. Yes.
Q. We've talked ... about the termination document that was signed with respect to Ogden City [Mall]. So in your mind they couldn't bind you to that agreement because they didn't have authority to sign for the company—
A. That would be correct.
Q. —accurate? They couldn't negotiate a new lease for you either?
A. They were allowed and we—I permitted them to discuss with the malls conditions and terms, that was done many times, but they were not authorized to sign for the leases, no.
Q. So they could negotiate, but if one of them had gone in and upped the square footage, *upped the term of the lease*, upped the rent and signed on your behalf, *you would not have been bound by that?*
A. *They could not do that, no.*
(Emphasis added.) Even if the license agreement were ambiguous, we agree with the trial court that this testimony establishes that D.H. could not bind Jorgensen in writing or by conduct.

holdover by D.H. did not renew Jorgensen's lease.

¶ 17 Jorgensen additionally argues he had an implied right to renew his Fashion Place lease. Utah appellate courts have not recognized an implied right to renew a lease. Utah appellate courts have also been reluctant to imply terms in leases. *See Cottonwood Mall Co. v. Sine*, 767 P.2d 499, 502 (Utah 1988) (concluding trial court properly refused to "make an agreement where the parties had . . . failed").

¶ 18 Jorgensen's lease with Fashion Place contains an express option to extend the lease, and the undisputed facts show Jorgensen did not exercise that option. Additionally, the lease contains a surrender clause and is for a term of years. The undisputed facts also show that after Jorgensen negotiated his lease, he had no further contact with Fashion Place in regard to the lease. Rather, he allowed D.H. to operate as the tenant in fact, and Fashion Place believed D.H. was the tenant. We conclude no reasonable jury could conclude that Jorgensen had an implied right to renew the lease.

¶ 19 In sum, because D.H. did not have the authority to extend or renew Jorgensen's lease with Fashion Place, and because any holdover by D.H. did not renew the lease, Jorgensen's lease expired on its own terms and was not in effect when Fashion Place's lease with D.H. went into effect on October 2, 1991. Therefore, Fashion Place did not breach its lease with Jorgensen by entering into a lease with D.H.

### B. The Ogden Mall Lease

¶ 20 Jorgensen argues his lease with Ogden Mall was in effect at the same time as B & T's lease with Ogden Mall, and therefore, Ogden Mall breached its lease with Jorgensen. The parties do not dispute that B & T operated the Ogden Mall store as D.H.'s licensee, and on October 2, 1991, Ogden Mall entered into a Termination Agreement with D.H. All parties agree that because D.H. could not bind Jorgensen in writing, this Termination Agreement was ineffective. Almost simultaneously with the Termination Agreement, Ogden Mall entered

into a lease, effective October 9, 1991, with B & T. The expiration date of Jorgensen's lease with Ogden Mall was June 30, 1992. Although the leases overlap, the undisputed facts show B & T made license payments to Jorgensen and operated the store under the Jorgensen trade name during the overlap period. Therefore, as a matter of law, Jorgensen received all he was entitled to as a result of the Ogden Mall lease.

¶ 21 For similar reasons articulated in our analysis under the Fashion Place lease, we also reject Jorgensen's argument that he had an implied right to renew the Ogden Mall lease. Like the Fashion Place lease, the Ogden Mall lease contained a surrender clause and was for a term of years. Jorgensen also allowed B & T to operate as the tenant in fact, and Ogden Mall representatives believed B & T was the tenant. We conclude no reasonable jury could conclude that Jorgensen had an implied right to renew the Ogden Mall lease.

### II. Breach of Covenants of Good Faith and Fair Dealing

¶ 22 Jorgensen argues Mall Defendants breached covenants of good faith and fair dealing because, as the named tenant, he reasonably expected Mall Defendants would renew his leases. Under the covenant of good faith and fair dealing, parties to a contract impliedly promise not to "intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991). To comply with the covenant, a party's actions "must be consistent with the agreed common purpose and the justified expectations of the other party." *Id.* at 200 (citing *Bastian v. Cedar Hills Inv. & Land Co.*, 632 P.2d 818, 821 (Utah 1981); *Ferris v. Jennings*, 595 P.2d 857 (Utah 1979)).

¶ 23 The undisputed facts show Jorgensen never informed Mall Defendants of his license agreements with D.H. and B & T because Jorgensen wanted to maintain control over the leases, and the leases required Mall Defendants to approve sublessees. After Jorgensen signed his leases with Mall

Defendants, he had no further contact with Mall Defendants in regard to the leases. From the leases' inception, Jorgensen allowed D.H. and B & T to operate as tenants in fact. D.H. and B & T were the only occupants throughout the terms of the leases, and they paid rent and performed all other obligations under the leases. Furthermore, Jorgensen did not check the status of his Fashion Place lease until three years after it expired and did not check the status of his Ogden Mall lease until two years after it expired. Because Jorgensen's contact with Mall Defendants during the terms of the leases was limited to signing his initial leases, and because he made no effort to inform Mall Defendants that any lease renewal should be negotiated with him and not D.H. and B & T, we conclude Jorgensen could not have reasonably expected Mall Defendants to renew the leases with him. Additionally, the undisputed facts show Mall Defendants did not purposefully deprive Jorgensen of his leases. Mall Defendants reasonably believed D.H. and B & T were the tenants when they negotiated leases with D.H. and B & T.

¶ 24  Given these undisputed facts, reasonable minds could not differ as to whether Mall Defendants acted consistently with Jorgensen's justified expectations. Therefore, as a matter of law, Mall Defendants did not breach the covenants of good faith and fair dealing implied in their leases with Jorgensen.

### III.  Mall Defendants' Attorney Fees

¶ 25  Jorgensen argues the trial court erred in awarding Mall Defendants' attorney fees as well as approving Mall Defendants' fee allocation. During oral argument, Jorgensen argued that if his leases expired according to their terms, then the claims Mall Defendants successfully defended against were post-lease disputes and attorney fees are unrecoverable.[6]  A party may

recover attorney fees in accordance with the terms of a contract.  *See Dejavue, Inc. v. U.S. Energy Corp.*, 1999 UT App 355, ¶ 18, 993 P.2d 222.  Article 25 of both leases provides:

> If at any time after the Effective Date, either Landlord or Tenant institutes any *action or proceeding against the other relating to the provisions of this Lease* or any default hereunder, the nonprevailing party in such action or proceeding shall reimburse the prevailing party for the reasonable expenses of attorney fees and all costs and disbursements incurred therein by the prevailing party, including, without limitation, any such fees, costs or disbursements incurred on any appeal from such action or proceeding.

(Emphasis added.)

¶ 26  Ordinarily fees are recoverable only to the extent a party seeks to enforce rights under a lease.  *See Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269–70 (Utah 1992). However, Article 25 permits prevailing parties to recover fees "relating to the provisions of [the] lease[s]," not just fees incurred in enforcing rights under the leases, and Jorgensen's claims relate to the provisions of the leases.  Therefore, we conclude this lease language is broad enough to permit Mall Defendants to recover fees for successfully defending against Jorgensen's breach of lease claims, including the covenant of good faith and fair dealing claims.  Accordingly, the trial court did not err in awarding attorney fees to Mall Defendants.

¶ 27  Jorgensen also argues the trial court improperly awarded attorney fees to Mall Defendants for successfully defending against his conspiracy to defraud claims because, as tort claims, they do not relate to the leases.  However, parties are entitled to fees when compensable and non-compensable claims overlap.  *See Dejavue*, 1999 UT App 355 at ¶ 21, 993 P.2d 222 (affirming trial

---

6. Jorgensen made this alternative argument below in regard to Fashion Place, and the trial court rejected it. On appeal Jorgensen did not raise this argument until oral argument. We have been reluctant to address issues raised during oral argument that have not been designated as issues on appeal in a docketing statement or in the briefs because the opposing party has no chance to prepare to refute the issues with reasoned analysis supported by legal authority.  *See State v. Arviso*, 1999 UT App 381, ¶ 4 n. 2, 993 P.2d 894;  *see also Maack v. Resource Design & Constr., Inc.*, 875 P.2d 570, 575 n. 3 (Utah Ct. App.1994) (refusing to address breach of contract issue not briefed on appeal).

court's fee award because contract counterclaim and tort claim were based on related legal theories involving common core of facts); *Brown v. David K. Richards & Co.*, 1999 UT App 109, ¶¶ 22, 24, 978 P.2d 470 (concluding trial court erred when it reduced fees because attorneys' efforts went to prove facts common to recoverable contract and non-recoverable fraud claims).

¶ 28 In the present case, the conspiracy to defraud and breach of lease claims significantly overlapped. Jorgensen's Third Amended Complaint incorporated the same seventy-six background facts to support the breach of lease and conspiracy to defraud claims. The claims also relied on similar theories. Additionally, Mall Defendants used the same facts and discovery, depositions in particular, to defend against these claims. Accordingly, we conclude the trial court did not err in awarding attorney fees to Mall Defendants for successfully defending against the conspiracy to defraud claims.

¶ 29 Jorgensen additionally argues Mall Defendants did not properly allocate fees. He specifically argues Mall Defendants' allocation to the occupancy counterclaims against Jorgensen and cross-claims against D.H. and B & T, on which Mall Defendants are not entitled to fees, is insufficient. He also argues the trial court did not require a proper explanation for the allocation.

¶ 30 A party who seeks fees "must categorize the time and fees expended for '(1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement to attorney fees.'" *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998) (quoting *Cottonwood Mall Co.*, 830 P.2d at 269–70). An allocation is sufficient if the "substance of the process ... [results in] separating recoverable from non-recoverable fees." *Brown*, 1999 UT App 109 at ¶ 15, 978 P.2d 470 (concluding fee allocation was sufficient where party went through billing records and eliminated non-recoverable fees, then articulated this process for the trial court in an evidentiary hearing, although party forewent the exercise of allocating unrecoverable fees between *Foote* categories two and three).

¶ 31 Like counsel in *Brown*, Mall Defendants' counsel submitted an affidavit and memoranda accompanied by fee invoices. Some entries noted occupancy counterclaim and cross-claim work; other entries did not, but were proffered during a hearing before the trial court. The record shows the trial court allowed Jorgensen to challenge this proffer. The record also shows the proffered fees included claims on which Mall Defendants prevailed. Therefore, Mall Defendants' counsel over allocated fees to the occupancy counterclaims and the cross-claims. We agree with the trial court that counsel's affidavit, memoranda, the invoices, and the proffer sufficiently separate recoverable and non-recoverable fees. Therefore, the trial court did not abuse its discretion in approving Mall Defendants' fee allocation.[7]

7. Jorgensen further argues the trial court's findings in regard to Mall Defendants' fee allocation were insufficient. A trial court must "make findings which closely resemble the requesting party's allocation of fees on each claim.... [T]he trial court must clearly identify and document the factors it considered dispositive in calculating the award." *A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.*, 1999 UT App 87, ¶ 32, 977 P.2d 518 (citation omitted). In its findings of fact, the trial court determined Mall Defendants' counsel "properly categorized the time, fees, costs and expenses expended," then listed the *Foote* factors, *see Foote*, 962 P.2d at 55, and incorporated by reference Mall Defendants counsel's affidavit and memoranda. The court also determined that the fees, costs and expenses and number of hours claimed were justified considering the difficulty of the litigation, efficiency of the attorneys, reasonableness of the hours spent on the case, fees customarily charged for similar services, amount involved, result obtained, and expertise and experience of the attorneys involved. In the trial court's conclusions of law, the court concluded that Mall Defendants' counsel properly allocated fees according to *Foote* and counsel's affidavit and proffered testimony satisfied *Foote* and *Cabrera v. Cottrell*, 694 P.2d 622, 624–25 (Utah 1985). We conclude these findings and conclusions were sufficient to meet the requirements set forth in *Whipple*. *See Whipple*, 1999 UT App 87 at ¶ 32, 977 P.2d 518.

## IV. Jorgensen's Attorney Fees

¶ 32 Jorgensen argues the trial court improperly denied his fees on the occupancy counterclaims. If a party fails to properly apportion attorney fees, a trial court may deny that party's fee request. *See Utah Farm Prod. Credit Ass'n v. Cox,* 627 P.2d 62, 66 (Utah 1981) (concluding trial court did not abuse its discretion in requiring parties to pay their own fees where plaintiff failed in his proof, and court was left without means to determine fees spent in prosecuting complaint and defending against counterclaim); *see also Cottonwood Mall Co. v. Sine,* 830 P.2d 266, 269 (Utah 1992) (remanding for further proceedings where party failed to provide adequate basis for award, essentially preventing court from applying the factors of *Cabrera v. Cottrell,* 694 P.2d 622, 624–25 (Utah 1985)).

¶ 33 In Jorgensen's motion for attorney fees he claimed he was entitled to $64,706.36. He incurred $76,688.43 in total fees between January 1998, when he began his defense against the occupancy counterclaims, and March 1999. He allocated 57%, $43,712.40, of those fees to the occupancy counterclaims. He also claimed he was entitled to 17% of his total fees, $13,037.03, for defending against Mall Defendants' indemnity counterclaims.[8] He supported his fee allocation with an affidavit accompanied by invoices including all fees incurred during this period. Several entries indicated that work performed was on the counterclaims; many others did not.

¶ 34 After reviewing Jorgensen's submissions, the trial court concluded, in its July 29, 1999 Memorandum Decision, that Jorgensen's counsel allocated too much time to defending against the occupancy counterclaims as the claims were "defensive in nature" and "did not change the nature of this litigation." The court denied Jorgensen fees at that time, but permitted Jorgensen's counsel to re-submit documentation to substantiate a more reasonable allocation. In the re-submitted allocation Jorgensen's counsel corrected a calculation error, reduced the indemnity counterclaim fees by half, and reduced total fees by $7,703.08 because some fees had become unrecoverable due to the trial court's rulings. Jorgensen still alleged he was entitled to 57% of his total fees incurred between January 1998 and March 1999 for defending against the occupancy counterclaims.

¶ 35 In its ultimate findings of fact, the trial court found Jorgensen failed to properly categorize fees and listed the *Foote* factors. *See Foote v. Clark,* 962 P.2d 52, 55 (Utah 1998). The court also determined the fees were unjustified because of the lack of difficulty of the claims on which Jorgensen prevailed, inefficiency of the attorneys, the claims were defensive in nature and "if not made, would not have significantly reduced the fees and costs incurred by [Jorgensen] in pursuing [his] claims," the unreasonable number of hours claimed spent defending the claims, the amount involved in the case, the result obtained, and the failure of Jorgensen to prevail on a single cause of action in his Third Amended Complaint. In the trial court's conclusions of law the court concluded Jorgensen failed to comply with *Foote,* 962 P.2d at 55, and *Cabrera,* 694 P.2d at 624–25.

¶ 36 We conclude Jorgensen had sufficient opportunity to comply with *Foote* and *Cabrera. See Foote,* 962 P.2d at 55; *Cabrera,* 694 P.2d at 624–25. Because Jorgensen failed to do so, the trial court did not err in denying Jorgensen attorney fees.

## V. Attorney Fees on Appeal

¶ 37 Finally, Jorgensen and Mall Defendants claim attorney fees on appeal. Article 25 of the leases provides that nonprevailing parties shall reimburse "fees, costs or disbursements incurred on any appeal from such action or proceeding." We routinely allow attorney fees on appeal when contracts expressly provide for fees on ap-

---

8. It is not clear why Jorgensen claims these fees because Mall Defendants prevailed on the indemnity counterclaims. The trial court awarded attorney fees to Mall Defendants under Article 9.1, the leases' indemnity articles, for defending against Jorgensen's negligence claims. Jorgensen appears to suggest he is entitled to fees for defending against the indemnity counterclaims because the trial court refused to award, under Article 9.1, Mall Defendants' attorney fees for defending against Jorgensen's breach of lease and covenant of good faith and fair dealing claims. However, the trial court awarded, under Article 25, Mall Defendants' fees for these claims.

peal. *See Sprouse v. Jager*, 806 P.2d 219, 227 (Utah Ct.App.1991). Accordingly, we remand for determination of Mall Defendants' reasonable attorney fees on appeal.

## CONCLUSION

¶ 38 We conclude that given the undisputed facts, the trial court did not err in awarding Mall Defendants summary judgment on Jorgensen's breach of lease and breach of covenant of good faith and fair dealing claims. We also conclude the trial court appropriately awarded attorney fees to Mall Defendants and denied fees to Jorgensen. We remand for determination of reasonable attorney fees due Mall Defendants on appeal.

¶ 39 WE CONCUR: JAMES Z. DAVIS, Judge, GREGORY K. ORME, Judge.