2001 UT App 287

David L. ORLOB, et al., Plaintiffs and Appellants,

v.

WASATCH MANAGEMENT, Kenneth C. Jensen, Earlene B. Jensen, Steven K. Jensen, and Kevin J. Jensen, Defendants and Appellees.

No. 20000987–CA.

Court of Appeals of Utah.

Oct. 4, 2001.

David J. Burns and David W. Scofield, Parsons Davies Kinghorn & Peters, Salt Lake City, for Appellants.

Thomas N. Thompson and James C. Haskins, Haskins & Associates, Salt Lake City, for Appellees.

Before Judges GREENWOOD, JACKSON, and BENCH.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 David L. Orlob (Orlob) appeals a summary judgment ruling that concludes he has no individual interest in a contract (the Combined Agreement) he signed as an individual and corporate officer with Wasatch Medical Management (Wasatch) and its principal partners (the Jensens). Orlob also appeals a partial summary judgment ruling denying that he had personally contracted "not to compete with Wasatch and Jensens." The district court concluded that the obligations in the Combined Agreement were "inextricably intertwined with [Orlob's] status as President and sole shareholder," and that "none of those obligations relate[d] to [Orlob's] status solely as an individual unrelated to the corporate entity." We disagree and reverse and remand for further proceedings.

## BACKGROUND

¶ 2 Orlob was the sole shareholder and president of Professional's Control Group, Inc. (PCG), which provided billing services to physicians in the Salt Lake City, Utah metropolitan area. PCG contracted to sell all its assets to Wasatch on August 31, 1988. The Combined Agreement defines the parties as two groups, namely: PROFESSIONAL'S CONTROL GROUP, INC., its principal shareholder David L. Orlob, hereinafter collectively referred to as "Orlob," and WASATCH MEDICAL MANAGEMENT, A PARTNERSHIP, whose principal partners are Kenneth C. Jensen, Earlene B. Jensen, Steven K. Jensen and Kevin J. Jensen, hereinafter collectively referred to as "Jensens."

¶ 3 The Combined Agreement provides for the transfer of office equipment, contains covenants of the parties, and sets amounts to be paid. Wasatch and the Jensens agreed to pay $15,000 for the office equipment in two payments of $7,500. Further, they agreed to pay for performance of covenants through a staggered compensation package over approximately five years from October 1, 1988, through July 31, 1994, including commission payments of $7,500 per month. The covenants of the Combined Agreement obligated Orlob and PCG to "assist in the orderly transfer of all accounts," and to "not compete directly or indirectly in Utah against or adverse to [Wasatch and the Jensens] for a period of ten years."

¶ 4 After the parties executed the Combined Agreement, PCG stopped further business operations and was involuntarily dissolved by the State of Utah for failing to file an annual report. Orlob moved to California in late 1989.

¶ 5 In 1990, the Internal Revenue Service (IRS) contacted Wasatch and the Jensens in its search for Orlob regarding PCG's unpaid tax liability. The Jensens attempted to contact Orlob, but Orlob did not respond. The IRS then seized payments the physician clients owed Wasatch under the Combined Agreement and PCG's interest in the Combined Agreement, which included the commissions Wasatch and the Jensens owed Orlob and PCG. The IRS then sold PCG's "right, title, and interest" in the Combined Agreement to Wasatch at a public sale on December 10, 1990, for $9,406.31. Wasatch stopped making commission payments to Orlob after the IRS seized the payments owed to Wasatch. Orlob filed this action when Wasatch stopped making commission payments to him.

¶ 6 The district court granted Wasatch's and the Jensens' motion for summary judgment, concluding that Orlob had no interest in the Combined Agreement separate and distinct from PCG. In doing so, the district court denied Orlob's motion for partial summary judgment that the Combined Agreement "provided that Orlob contracted not to compete with [Wasatch and the Jensens]." The district court also concluded that "refer-

ences to 'Orlob' refer to him not simply as an individual separate and apart from PCG, but refer to him *only* in his capacity as the President and principal shareholder of PCG." (Emphasis added.) Thus, the district court concluded that "[a]ll of the obligations of Plaintiff Orlob with respect to the Combined Agreement are inextricably intertwined with his status as President and sole shareholder of [PCG], and none of those obligations relate to his status solely as an individual unrelated to the corporate entity."

¶ 7 Orlob appealed the district court's rulings to the Utah Supreme Court, which transferred the appeal to us under Utah Code Ann. § 78–2–2(4) (1996). We have jurisdiction under Utah Code. Ann. § 78–2a–3(2)(j) (1996).

## ISSUES AND STANDARD OF REVIEW

■■■ ¶ 8 Orlob first argues that the district court erred in its grant of Wasatch's and the Jensens's summary judgment by "ruling that the Combined Agreement is unambiguous and that [Orlob] does not have an interest in the same that is separate and distinct from the interest of the corporation." On appeal from a grant of summary judgment, " ' "[w]e view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." ' " *Keith Jorgensen's, Inc. v. Ogden City Mall Co.*, 2001 UT App 128,¶ 10, 26 P.3d 872 (citations omitted). We review for correctness the district court's determination " 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Rawson v. Conover*, 2001 UT 24,¶ 25, 20 P.3d 876 (quoting Utah R. Civ. P. 56(c)). Finally, we "review the [district] court's interpretation of [a contract] for correctness, according no deference to the court's conclusions of law." *Keith Jorgensen's*, 2001 UT App 128 at ¶ 10, 26 P.3d 872 (second alteration in original) (internal quotations and citation omitted); *see also Dixon v. Pro Image, Inc.*, 1999 UT 89,¶ 14, 987 P.2d 48 (stating that a court can interpret a contract as a matter of law if the contract is

unambiguous, and must " 'harmonize and give effect to all of [its] provisions' ") (alteration in original) (internal citations omitted).

¶ 9 Next, Orlob argues the district court erred in denying his motion for summary judgment by "refusing to rule that the Combined Agreement provides that [Orlob] contracted not to compete with [Wasatch and the Jensens]." We review this argument under the same standard of review.[1]

## ANALYSIS

¶ 10 Orlob argues that he is a party with an individual interest in the Combined Agreement apart from PCG's interest. The district court concluded that, "if any, [Orlob's] interest is not severable from the interest of ... PCG." First, we review whether the Combined Agreement unambiguously includes PCG as the only interested party to the Combined Agreement with Wasatch and the Jensens. Next, we evaluate whether Orlob has an individual interest in the Combined Agreement, and whether he covenanted, individually, not to compete with Wasatch and the Jensens.

### I. Parties to the Combined Agreement

¶ 11 The Combined Agreement uses the word "Orlob" to refer to Orlob and PCG "collectively." However, the district court concluded that "references to 'Orlob' refer to him not simply as an individual separate and apart from PCG, but refer to him *only* in his capacity as the President and principal shareholder of PCG." (Emphasis added.) The district court based its conclusion on the fact that "Orlob was the sole shareholder and President of [PCG]," and on the following paragraph of the Combined Agreement which defines the parties:

> This agreement is made between two groups, namely: PROFESSIONAL'S CONTROL GROUP, INC., its principal shareholder David L. Orlob, hereinafter collectively referred to as "Orlob," and WASATCH MEDICAL MANAGEMENT, A PARTNERSHIP, whose principal part-

---

1. We do not reach Wasatch's and the Jensens' cross-appeal of the denial of their Motion for Order Allowing Costs and Attorney Fees because we reverse the district court's grant of their motion for summary judgment.

ners are Kenneth C. Jensen, Earlene B. Jensen, Steven K. Jensen and Kevin J. Jensen, hereinafter collectively referred to as "Jensens."

Thus, we review the Combined Agreement to determine whether it refers to Orlob only in his capacity as president and sole shareholder of PCG and not in his individual capacity.

¶ 12 "If a contract is unambiguous . . . 'a court may interpret [it] as a matter of law.' In so doing, a court must attempt to construe the contract so as to 'harmonize and give effect to all of [its] provisions.'" *Dixon v. Pro Image, Inc.*, 1999 UT 89, ¶ 14, 987 P.2d 48 (alteration in original) (citations omitted). "To determine whether a contract is ambiguous, 'we first look to the four corners of the contract.'" *Gardner v. Madsen*, 949 P.2d 785, 789 (Utah Ct.App.1997) (citation omitted). "'A contract provision is ambiguous if it is capable of more than one reasonable interpretation because of "uncertain meanings of terms, missing terms, or other facial deficiencies."'" *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 14, 28 P.3d 669 (citations omitted).

¶ 13 Here, the preamble of the Combined Agreement sets forth two "groups" who are the parties. These two groups are defined as "PROFESSIONAL'S CONTROL GROUP, INC., its principal shareholder David L. Orlob" (the Orlob Group), and "WASATCH MEDICAL MANAGEMENT, A PARTNERSHIP, whose principal partners are Kenneth C. Jensen, Earlene B. Jensen, Steven K. Jensen and Kevin J. Jensen" (the Jensens Group). The preamble also states that the Orlob Group is to be "collectively referred to as 'Orlob,'" and the Jensens Group is to be "collectively referred to as 'Jensens.'" This wording, used to describe the parties to the Combined Agreement, does not clearly state whether the individuals, Orlob and the Jensens, are parties along with the companies. Looking at

this preamble alone, we can not say that the Combined Agreement unambiguously describes the parties.

¶ 14 However, when we "'look to the four corners of the contract,'" *Gardner*, 949 P.2d at 789 (citation omitted), to "'harmonize and give effect to all of [its] provisions,'" the intent of the parties becomes clear and unambiguous. *Dixon*, 1999 UT 89 at ¶ 14, 987 P.2d 48 (citation omitted). Initially, the covenants described in the Combined Agreement are personal in nature and refer to Orlob individually. The Combined Agreement states that "[f]or commissions paid and profits shared Orlob warrants that *he* will assist in the orderly transfer of all accounts to Jensens." (Emphasis added.) Moreover, in the Combined Agreement "Orlob further agrees and warrants *he* will not compete directly or indirectly in Utah against or adverse to Jensens." (Emphasis added.) These covenants require Orlob's individual performance; performance solely by PCG does not suffice.[2]

¶ 15 Next, if only PCG and Wasatch entered into the Combined Agreement, the signature page would only contain signature lines for the two companies. Here, the seven signature lines on the signature page reveal that PCG and Wasatch entered into the Combined Agreement along with Orlob and the Jensens, in their individual capacities. Any doubts as to whether Orlob and the Jensens were signing in their individual capacities is overcome by the label, "individual," after the names of Orlob and of each of the Jensens under their respective signature lines. These signature lines are separate from the other two signature lines, one for PCG, signed by "David L. Orlob, President," and the other for Wasatch, signed by Kenneth C. Jensen, the "General Partner."

¶ 16 The individual nature of some of the covenants and some of the references to Orlob, along with Orlob's signature in his individual capacity, clarify any ambiguity present in the preamble. Thus, we conclude that the

2. We note that PCG was a one-man operation. Since Orlob was the sole shareholder and president of the company, the company's good will was Orlob's personal reputation. *See Sorensen v. Sorensen*, 839 P.2d 774, 775 (Utah 1992) ("[T]he good will of a sole practitioner is nothing more

than his or her reputation for competency. . . ."). Thus, Orlob's covenants to transfer and preserve PCG's good will were individual covenants to transfer and preserve the value of Orlob's reputation.

Combined Agreement unambiguously included both PCG and Orlob, separately and distinctly, as parties in the Orlob group of the Combined Agreement. Accordingly, the term "Orlob," as used in the Combined Agreement, refers to both PCG and Orlob in his individual capacity, and not to Orlob "only in his capacity as the President and principal shareholder of PCG."

## II. Orlob's Individual Interest as a Party

██ ¶ 17 Although Orlob, individually, is a separate and distinct party to the contract, the question remains whether he has any interest in the Combined Agreement. The district court concluded that "[a]ll of the obligations of ... Orlob with respect to the Combined Agreement are inextricably intertwined with his status as President and sole shareholder of that closely held corporation, and none of those obligations relate to his status solely as an individual unrelated to the corporate entity." Further, the district court concluded that "[w]hatever the nature of ... Orlob's ownership interest in the Combined Agreement, if any, that interest is not severable from the interest of ... PCG, in the Combined Agreement."

██ ¶ 18 "Corporations can only act through agents, be they officers or employees." *Reedeker v. Salisbury*, 952 P.2d 577, 582 (Utah Ct.App.1998) (quoting *Davis v. Payne & Day, Inc.*, 10 Utah 2d 53, 348 P.2d 337, 339 (1960)). However, " '[t]he general rule is that a corporation is an entity *separate and distinct* from its officers, shareholders and directors and that they will not be held personally liable for the corporation's debts and obligations.' " *Id.* (citation omitted) (emphasis added). Thus, although PCG could only enter into a contract through the signature of its president, Orlob is not individually bound by the signature penned in his capacity as president of the company, nor by virtue of his status as either officer or shareholder. Consequently, if Orlob had not signed the Combined Agreement as an individual, he would not be bound to any of the terms of the Combined Agreement. Here, Orlob signed the contract in his individual

capacity, thus, he personally covenanted to assist in the transfer and maintenance of accounts and not to compete.

¶ 19 The Combined Agreement required the purchase and sale of physical assets and the performance of certain covenants. The physical assets of PCG had a contract price of $15,000. The parties attached greater value to the covenants to assist in the transfer and maintenance of accounts and not to compete. Without these covenants, whatever good will and reputation being transferred could be undermined by competition from either Orlob or PCG. The parties agreed that the covenants of the Combined Agreement were worth more than $500,000 during its term. Without Orlob's personal covenants and promises, and personal assistance and involvement, the agreement would have little value. Thus, we conclude that Orlob has an individual interest in the Combined Agreement, which is tied to his covenants to assist in the transfer and maintenance of accounts and not to compete.

## CONCLUSION

¶ 20 We conclude the Combined Agreement unambiguously includes Orlob, individually, as a party. Further, he has an individual interest in the Combined Agreement separate and distinct from PCG's interest. His interest arises from the personal covenants he made to assist with the orderly transfer and maintenance of accounts and not to compete with Wasatch and the Jensens.[3]

¶ 21 Accordingly, we reverse the district court's grant of Wasatch and the Jensen's motion for summary judgment. We reverse the district court's denial of Orlob's motion for partial summary judgment. We remand for further proceedings consistent with this opinion.

¶ 22 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and RUSSELL W. BENCH, Judge

---

3. We do not address what percentages of interest Orlob and PCG had in the Combined Agreement, nor do we address whether Orlob breached the Combined Agreement.